27 C.C.P.A.(Patents)

## VREELAND v. MILLER.

### Patent Appeals No. 4311.

Court of Customs and Patent Appeals.
June 24, 1940.

Rehearing Denied Sept. 30, 1940.

Samuel E. Darby, Jr., and Floyd H. Crews, both of New York City, for appellant.

Harry G. Grover, of New York City (James G. Norton and Abraham S. Greenberg, both of New York City, of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

This is. an appeal in an interference proceeding from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Examiner of Interferences awarding priority of the invention defined in the ten counts in issue to appellee, John M. Miller.

The interference is between appellant's patents No. 1,725,433, issued August 20, 1929 on an application, No. 209,650, filed August 1, 1927, and No. 1,850,973, issued March 22, 1932 on an application, No. 377,409 filed August 1, 1927, which is a division of application No. 209,650, appellant's applications No. 599,749, filed March 18, 1932, and No. 300,172, filed August 17, 1928, which application is a continuatio.1 in part of his application No. 209,650, and appellee's applications No. 150,571, filed November 24, 1926, and No. 572,927, filed November 4, 1931, as a division of his application No. 150,571.

Counts 1 and 2 originated in appellant's patent No. 1,725,433, counts 5 and 6 originated in appellant's patent No. 1,850,973, count 10 originated in appellant's application No. 300,172, and counts 3, 4, 7, 8, and 9 originated in appellee's application No. 572,927.

■ Appellant is the junior party, and the burden was upon him to establish priority of the invention by a preponderance of the evidence.

■ The record before us contains decisions of the Examiner of Interferences in two interferences—Nos. 72,251 and 61,463 —involving the same parties. At the time the Examiner of Interferences rendered those decisions, count 10 of the involved interference was the single count in interference No. 72,251. Subsequent to the rendition of the examiner's decisions, the Board of Appeals, on motion by appellant, consolidated the interferences and the single count in interference No. 72,251 became count 10 in the consolidated interference—No. 61,463.

The invention relates to a radio receiver, designed and arranged for the purpose of faithfully reproducing sounds. such as speech and music transmitted from broadcasting stations. The details of the circuit arrangement and the adjustments of other instrumentalities included therein to make the receiver responsive without distortion to an entire audio frequency band received by the antenna are sufficiently set forth in counts 2 and 10.

The method for securing the desired results is defined in count 1.

Counts 1, 2, and 10 read:

"1. The method of selectively receiving the transmission band of a modulated signal wave which consists in applying the signal energy to a receiving system, balancing the reactances of the system in pairs at one limiting frequency, balancing the unbalanced reactances of the pairs at another limiting frequency by a reactance common to both pairs, thereby receiving with substantial uniformity all frequencies in the band included between these limiting frequencies, and varying the position of the band of reception in the frequency scale by simultaneously and similarly varying the balanced reactances.

"2. In a system for receiving the transmission band of a modulated wave, a band selector unit comprising two reactive couples, each having reactances that are partly balanced at the frequencies included in the transmission band, an untuned reactance common to both couples whose value is so related to the reactances of the couples that the unbalanced portion of those reactances is balanced and the system is made responsive to all frequencies within a definite band, and means for simultaneously and similarly varying the partly balanced reactances, thereby shifting the band of response in the frequency scale while preserving its band character.

"10. In a receiving system for modulated radio frequency energy, the combination of two reactive couples tuned to a frequency of said energy, means for impressing said energy on one of said couples, a coupling reactance common to both couples whose value is so related to the reactances of the couples as to effect highly uniform and selective transfer of the modulated energy through a frequency range corresponding substantially to the range of audio frequencies, and means for aperiodically amplifying the selected modulated radio frequency energy."

The invention was defined by the Examiner of Interferences and the Board of Appeals in substantially the same language, the board stating: "The subject matter in issue relates to a radio receiver including a signal selector for tuning in the desired signal, which selector has a band response such that the entire band of the modulated signal is received with substantially equal intensity, thereby displaying a flat top response curve giving good tone quality. The selector has a sharp cut off so that frequencies outside the desired band are not passed by the selector, thus producing sharp selectivity and cutting out interfering stations operating on a different frequency from that to which the selector is tuned."

It is unnecessary to explain the differences in the counts in issue, as counsel for appellant state in their brief that such differences are immaterial to the issues here presented.

It is also stated in the brief of counsel for appellant that appellant conceived the invention as early as 1919 or 1920; that he repeatedly reduced it to practice during the period from 1920 to 1927; that appellee derived the invention from appellant, and that for that reason, if for no other, appellee is not entitled to an award of priority.

Each of the tribunals of the Patent Office stated in considerable detail the evidence introduced by appellant relative to his alleged conception of the invention and reduction of it to practice prior to July 17, 1926, and each was of opinion that that evidence was insufficient to establish that appellant had either conceived the invention or reduced it to practice at any time prior to July 17, 1926, and that, although the evidence was sufficient to establish that appellant conceived the invention on or about July 17, 1926, that he

commenced the construction of a radio receiving set during that month, and that that set which embodied the involved invention was completed on or about December 2, 1927, it was insufficient to establish that he was diligent at and immediately prior to the time appellee filed his original application here involved (November 24, 1926), and thereafter, until appellant had constructively reduced the invention to practice by the filing of his original application, No. 209,650, August 1, 1927, which matured into patent No. 1,725,433, August 20, 1929.

It is conceded by counsel for appellee that appellant conceived the involved invention on or about July 17, 1926.

It appears from the record, as stated in the decisions of the tribunals of the Patent Office, that appellant commenced the construction of a device conforming to the counts in issue during the month of July 1926. There is no evidence, however, that appellant was diligent in the completion of that device at and immediately prior to the time appellee filed his original application here involved (November 24, 1926), and thereafter until appellant filed his original application (August 1, 1927) disclosing the involved invention which matured into patent No. 1,725,433.

Relative to the contention of counsel for appellant that appellee derived the invention from appellant, it is sufficient to say that the evidence of record relative to that issue, which was set forth in the decisions of the tribunals of the Patent Office, is wholly insufficient to establish that appellee was not an original inventor.

Having disposed of the question of appellant's diligence in constructing a device in accordance with his conception of the involved invention in July 1926, and also the contention of counsel for appellant that appellee derived the invention from appellant, we may now turn to the evidence of record to determine whether appellant has established that he conceived and reduced the invention to practice prior to July 17, 1926—the date awarded him by the tribunals of the Patent Office for conception.

In his decision in interference No. 61,463, the important parts of which were made a part of his decision in interference No. 72,251, the Examiner of Interferences discussed in considerable detail the evidence relative to the construction and operation by appellant of various devices

832

from July 5, 1922 to July 1926, which devices were claimed by counsel for appellant to embody the involved invention, and held that such evidence was insufficient to establish either conception or a successful reduction to practice of the invention defined by the counts in issue.

In view of the fact that the evidence relative to each of the devices constructed and operated by appellant prior to July 1926, relied upon here by counsel for appellant, has been somewhat fully detailed in the decisions of the Examiner of Interferences and the Board of Appeals, we deem it unnecessary to enter upon a discussion of the evidence relative to all of appellant's devices constructed and operated during that period, but will limit our discussion to the evidence relative to the structure and operation of two of the devices relied upon here by counsel for appellant as establishing successful reduction to practice of the involved invention, it being understood that our views relative to those two devices, so far as conception and reduction to practice of the involved invention is concerned, are the same with regard to the other devices relied upon here by counsel for appellant.

Although, as hereinbefore noted, it is stated in the brief of counsel for appellant that appellant conceived the invention as early as 1919 or 1920 and that he repeatedly reduced it to practice during the period from 1920 to 1927, counsel here rely upon a device constructed and, it is claimed, successfully operated on July 5, 1922 for appellant's first successful reduction to practice. It is contended by counsel that that device was constructed in conformity with the invention defined in the counts in issue, and that its successful operation is completely established by the testimony of the witnesses Rolland E. Gorton and Frederick B. Llewellyn, both of whom were employed by appellant at that time.

The witness Gorton testified that he "personally set up the apparatus referred to under the headings both of July 5th and July 6th, to make sure that it was operating in its proper condition, before turning it over to Mr. Llewellyn and Dr. Vreeland [appellant] to make the comparisons. That is, I connected the regenerative tuner and amplifier together and to the necessary batteries and loud speaker, and tried them out on a local station, as was my practice in setting up laboratory apparatus for demonstration or test by

Mr. Vreeland and Mr. Llewellyn." The witness did not testify, however, that that device was successfully operated in the manner required by the counts in issue, or, as stated by the Examiner of Interferences, that it "displayed the response characteristics required" by the counts.

Relative to the operation of that device, the witness Llewellyn testified that he made no tests to determine the tone quality of the "received signals." He stated, however, that he had heard "Dr. Vreeland in a conversation with Professor Hazeltine state that his aim was to avoid trimming of the side bands."

Relative to the testimony regarding that apparatus, the Examiner of Interferences said:

"The first alleged reduction to practice on the part of Vreeland occurred on July 5, 1922, in which a selector circuit as shown by Fig. 74, exhibit 139 feeding into an aperiodic radio frequency amplifier was used for the reception of broadcast signals. It is contended this apparatus embodies the feature of counts 2, 3, 4, 7, 8 and 9. The corroborating testimony of Gorton and Llewellyn as to the result of the tests goes no further than to state that broadcast signals were received (Vreeland record, page 324, Q. 32; page 307, XQ. 195). The mere reception of signals is not deemed sufficient to show a reduction to practice of the invention in issue.

"On July 6 and 10, 1922, this same apparatus was allegedly used in a comparison test with a Westinghouse radio receiver however the corroborating testimony of Gorton and Llewellyn goes no further than to state that signals were received which as stated above is insufficient to establish reduction to practice. The above apparatus, according to the testimony of Vreeland, was demonstrated to representatives of the Brunswick, Balke Collender Co. and as a result a new radio receiver was made to go in a Brunswick cabinet. The set included a loop antenna which was loosely coupled with another coil, the coil and the loop being tunable with a two-gang single control condenser thus forming a selector unit.

"Llewellyn testified that the Brunswick set was demonstrated by tuning in various stations and by reference to his notebook entry (exhibit 249) that the demonstration was successful. By successful demonstration he meant that the music or talk from the broadcasting stations was received

in a satisfactory manner (Vreeland record, page 326, Qs. 48–50), however it is a well known fact that different persons possess different acuteness of hearing and it is noted that Llewellyn stated in connection with subsequent listening tests that he was not a very good judge of tone quality (Vreeland record, page 60, Q. 167). It is not thought that the meager testimony of Llewellyn, the only corroboratory witness for Vreeland as to tests on the Brunswick set, is sufficient to establish that the set displayed the response characteristics required by counts 2, 3, 4, 7, 8 and 9 as alleged by Vreeland."

It is contended here by counsel for appellant, as it was before the tribunals of the Patent Office, that appellant constructed a radio receiving set (referred to in the record as set No. 7), which conformed to the counts in issue, and that that set was successfully operated on July 20, 1923.

With reference to that contention of counsel, the Examiner of Interferences in his decision called attention to the fact that set No. 7 consisted of "a preselector of two coils loosely coupled and tuned with variable condensers feeding into a band amplifier adjustable in three steps to cover the desired broadcast range," and held that the evidence relative to the construction and operation of that set was insufficient to establish a successful reduction to practice of the invention defined in any of the counts in issue, the examiner stating that, although that set operated to receive broadcast signals, the evidence was insufficient to establish that it displayed the "transfer characteristics" called for by the counts in issue. The examiner also called attention to the fact that shortly after the test of set No. 7—July 20, 1923—appellant, on August 6, 1923, filed an application (which matured into patent No. 1,682,874, September 4, 1928) for a patent for a radio frequency amplifier, which amplifier was similar to the one used in set No. 7, and stated that appellant's application filed on August 6, 1923, "shows three stages of amplification each tuned to a certain frequency such that the combined effect of the three stages *covers a certain frequency range and produces a flat top curve.* The position of this band in the frequency scale can be shifted by switching in or out condensers so that the entire broadcast band can be covered. As illustrated, it is covered in three steps * * *" (italics ours); that it was not

contended by counsel for appellant that that application disclosed the invention defined in any of the counts in issue; and that had it disclosed the involved invention, appellant would have relied upon it in this interference as conclusively establishing conception and constructive reduction to practice as of August 6, 1923, long prior to appellee's claimed conception of the involved invention and its reduction to practice.

It may be said at this point that counsel for appellant make no claim here that appellant's application of August 6, 1923, disclosed the involved invention.

It further appears from the record that on July 20, 1926, appellant filed an application in the United States Patent Office, which application matured into patent No. 1,730,987 on October 8, 1929. The application related to a variable band amplifier for a radio receiving apparatus in which, as stated by the Examiner of Interferences, appellant disclosed "a receiving set having a *preselector of two tunable coils* loosely coupled together in which the looseness of coupling may be varied." (Italics not quoted.) With regard to that application, the examiner further stated that "It seems that Vreeland [appellant] would have disclosed [therein] that a variable loosecoupler could be used to produce the response required" by the involved counts had he known "at that time that such operation could be attained with it."

During the course of his cross-examination, appellant was interrogated concerning certain language contained in his patent No. 1,730,987, and replied: "I wish I could say that this quotation indicates that at the time my Patent 1730987 was applied for [July 20, 1926] I intended that [quotation from his patent] to indicate a conception of the *band selector invention* involved in this interference, but I cannot honestly do so." (Italics ours.)

So, although it is here earnestly urged by counsel for appellant that appellant conceived the invention and successfully reduced it to practice as early as July 5, 1922, and that he successfully reduced it to practice several times thereafter prior to the filing of appellee's application (November 24, 1926), it appears that appellant failed to disclose the involved invention in either of his applications filed August 6, 1923 and July 20, 1926, and did not file an application for a patent for the involved invention until August 1, 1927, **more**

than five years after his first claimed reduction of it to practice.

In view of the fact that the involved invention solved a very serious problem confronting the art, it is inconceivable that, had appellant conceived the invention and reduced it to practice as early as July 5, 1922, and reduced it to practice again on July 20, 1923 and at various times thereafter prior to July 20, 1926, he would have failed to disclose it in his applications filed August 6, 1923 and July 20, 1926, both of which applications related to the same general subject matter.

But one other matter requires consideration here.

Counsel for appellant contend in their brief that, although the Board of Appeals held that appellant "had both conceived the invention and reduced it to practice (by the construction of complete, operable radio receivers) prior to Miller's [appellee's] earliest alleged date," it, nevertheless, awarded priority of invention to appellee.

We have given careful consideration to the board's original decision and to its decision in answer to a request by counsel for appellant for a rehearing, and are of opinion that neither of those decisions is open to any such construction as that placed upon it by counsel for appellant.

We are in accord with the conclusion reached by the Board of Appeals, and its decision is affirmed.

Affirmed.